UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 1:05-cr-87 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| | ) | |
| RICHARD STEPHENS | ) | |
| | ) | |

# M E M O R A N D U M

Before the Court is Defendant Richard Stephens' ("Defendant") objection to the Report and

Recommendation ("R&R") (Court File No. 55) filed by United States Magistrate Judge Susan K.

Lee regarding his motion to suppress (Court File Nos. 14, 46).  The Court referred his motion to

Magistrate Judge Lee to conduct any necessary evidentiary hearings and to provide the Court a

report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (Court File No. 19).  Judge Lee

filed her R&R recommending Defendant's motion be denied.  Defendant timely objected to certain

factual findings and legal conclusions in the R&R (Court File No. 60).  Defendant also requests the

Court hold an evidentiary hearing on his objections (*Id.* at p. 1).  For the following reasons, the

Court will **ACCEPT** and **ADOPT** the magistrate's R&R and will **DENY** Defendant's motion to

suppress.  Further, the Court will **DENY** Defendant's request for an evidentiary hearing.


## I.    STANDARD OF REVIEW

"A judge of the court shall make a *de novo* determination of those portions of the report or

specified proposed findings or recommendations to which objection is made."    28 U.S.C.

§ 636(b)(1).

## II.  **RELEVANT FACTS**

Judge Lee's R&R contains a comprehensive recitation of the facts.  It is some twenty-five pages in length.  The only witness who testified at the evidentiary hearing whose testimony was considered was that of Rhea County Tennessee Deputy Sheriff Mike Bice ("Bice").  From the Court's reading of Defendant's objection, Defendant does not contest most of Judge Lee's factual recitation.  He does, however, question one factual matter that the Court will discuss before addressing the merits of his objections.  Defendant states "no evidence established that [D]efendant responded to supposedly being called 'Midget'" (Court File No. 60, p. 2).  The magistrate states in her recitation of the facts, "In response to Bice's call, [Defendant] looked up, down, and then up again . . ." (Court File No. 55, p. 4). Bice testified on direct examination in relevant part as follows:

Q      Did [Defendant] notice you?
A      Not at that time.
Q      When, if ever, did [Defendant] notice you?
A      I hollered at [Defendant].
Q      What did you say?
A      Actually I said, "Hey, Midget."
Q      What did [Defendant] do?
A      He looked up, went down, and immediately looked right back up.

(Court File No. 54, Transcript of Sept. 22, 2005 Suppression Hearing ("Supp. Tr.") at 15).  When counsel for Defendant cross-examined Bice he testified in relevant part as follows:

Q      Did [Defendant] notice you?
A      Well, I hollered, "Hey, Midget."
Q      But he didn't recognize that, right?
A      He looked up, went back to the ground, and immediately went back up.
Q      Okay. And that reaction could have been . . . "Hey, there is something in my
        doorway" and looking up? You don't know, right?
. . .

2

A       When I said, "Hey, Midget," he looked up. So -

(Supp. Tr. at pp. 53-54). Bice clearly stated on direct examination Defendant responded to him hollering "Midget". He never recanted this testimony on cross examination. It is reasonable to conclude Defendant's action in looking up was in direct response to someone *hollering* "Midget". While Defendant may not have *recognized* the name "Midget," the magistrate judge in her R&R never stated Bice recognized that name. Therefore, since Defendant's only objection to the magistrate judge's recitation of the facts is without merit, the Court will **ACCEPT** and **ADOPT** the fact portion of the R&R (Court File No. 55, pp. 2-5). These facts, as stated by the magistrate judge, will provide the basis for the Court's analysis of Defendant's objections.

III.     <u>DISCUSSION</u>

In addition to the objection just discussed, Defendant makes four principal objections to the magistrate's R&R. Defendant objects to (1) the magistrate judge's finding Bice was credible, (2) the magistrate judge's application of the plain view doctrine, (3) the magistrate judge's finding that Defendant voluntarily consented to a search of his residence, and (4) the magistrate judge's conclusion Defendant's "red-handed" statement should not be suppressed. The Court will discuss each of Defendant's objections in turn.

A.       **Credibility of Bice**

Defendant contends the record demonstrates Bice is not credible. Defendant's reasons for attacking Bice's credibility can be summarized as follows:

(1) Bice overstated his qualifications;
(2) Bice's testimony concerning the timing of the *Miranda* warnings was

3

inconsistent;[1]
(3) Bice had over two hours to get a warrant, but he opted to go for a "knock and talk";
(4) Bice's plain view testimony is not supported by the "positional, lighting, and physical premises facts arising out of the [G]overnment's own evidence";
(5) Bice did not document the "residue" evidence;
(6) Bice's attitude concerning the review of his grand jury testimony; and
(7) Bice's testimony of Defendant's physical position when he gave his consent is inconsistent

(Court File No. 60, pp. 3, 5-7). After a very careful review of the record, the Court agrees with the magistrate judge's determination that Bice is credible. The magistrate judge did an excellent job of explaining why Bice is credible. The magistrate judge more than adequately addressed all but one of the reasons summarized above. The Court sees no reason to repeat the magistrate judge's analysis in this memorandum and opinion.

When discussing Bice's credibility, the magistrate judge did not address a discrepancy in Bice's testimony concerning where Defendant was located when Bice initially asked him for consent to search his property. At the suppression hearing, Bice testified on direct examination Defendant was placed on the ground and handcuffed (Supp. Tr. at 17). He then testified Defendant was put into a chair and "at *that time* I began talking to [Defendant] and asking him for consent to search his property" (*Id.* at 17-18 (emphasis added)). On cross examination Bice testified Defendant was handcuffed and placed on the floor (*Id.* at 55). He then explained while Defendant was on the floor,

---

[1] At Defendant's detention hearing in July 2005, Bice testified *Miranda* warnings were given to Defendant *before* he signed the consent form (Court File No. 20, p. 16). At the suppression hearing in September 2005, Bice testified on direct examination the *Miranda* warnings were given to Defendant *after* he signed the consent form (Supp. Tr. at 23). Then, on cross examination Bice testified he could not recall if the *Miranda* warnings were given before or after the consent form was signed (Supp. Tr. at 59). This inconsistency is not enough for the Court to deem Bice's entire testimony unbelievable. Like the magistrate, all the Court is willing to conclude is the Government has not established when the *Miranda* warnings were given through Bice's testimony.

4

someone went to get a consent form and he asked Defendant if he would sign a consent form (*Id.* at 55, 67). Defendant agreed to sign a consent form and *then* was put in a chair (*Id.* at 67). Defendant's handcuffs were removed and he signed a consent form while sitting in a chair (*Id.* at 57, 67). Bice's testimony on when he initially asked Defendant for consent to search is inconsistent. Further, Bice's testimony of when Defendant first consented to a search is inconsistent. These two inconsistencies along with the *Miranda* warning inconsistency leads the Court to conclude the Government has not established the exact sequence of events inside the garage. However, despite these inconsistencies, the Court is unwilling to find Bice's entire testimony is unbelievable or fabricated. The underlying events occurred in June 2005 and the suppression hearing was in September 2005. It is not uncommon for a witness to forget certain details after a few months have transpired. Accordingly, the Court agrees with the magistrate Bice is credible.

**B.     Plain View Doctrine**

Bice testified at the suppression hearing he, along with two other law enforcement officers, entered Defendant's driveway and headed towards the front door of Defendant's residence. While walking toward the front door of the residence, the officers passed a detached garage, which was located to the right of the residence. Bice noticed a door at the corner of the garage was open. According to Bice, he looked inside the garage through the open door and saw Defendant sitting in a chair cutting buds off a marijuana stalk. From these facts, the magistrate judge concluded "I find Bice observed [Defendant] engaged in criminal activity in plain view while Bice was conducting a legitimate knock and talk and while in areas of [Defendant's] property – the driveway and the walkway leading to the front door of the residence – where [Defendant] had no legitimate expectation of privacy under the Fourth Amendment" (Court File No. 55, p. 15).

5

Defendant objects to the magistrate judge's finding not on legal grounds, but solely on factual grounds.[2] Defendant contends the physical layout of the garage and prevailing lighting conditions demonstrate it was impossible for Bice to see Defendant cutting off buds from a marijuana stalk (Court File No. 60, p. 5). After reviewing the photographs and arguments submitted by both sides, the Court is not convinced. The photographs show it would be impossible to see the entire inside of the garage, but they do not demonstrate it was impossible for Bice to see Defendant cutting off buds inside the garage. Accordingly, the Court will **ACCEPT** and **ADOPT** the magistrate judge's finding Bice saw Defendant committing a felony in plain view.

### C. Voluntariness of Consent

Next, Defendant objects to the magistrate judge's finding Defendant's consent to search his residence was voluntary and freely given. Defendant's objection on this point is without merit. Shortly after Bice noticed Defendant in the garage, he hollered "Hey Midget" and Defendant looked up, down, and then up again with an expression of surprise on his face. Defendant then jumped up out of his chair. The officers, with weapons drawn, told Defendant to raise his hands. The officers entered the garage and told Defendant to get down on the ground and they handcuffed him. As already mentioned, Bice testified on direct examination Defendant was put back in his chair and then asked if he would consent to a search of his property. However, Bice testified on cross examination Defendant was initially asked for consent to search while he was on the ground and after Defendant

---

[2] Defendant does not object to the magistrate judge's finding the law enforcement officers were lawfully present on Defendant's driveway and walkway leading to the front door of the residence. After reviewing the law and evidence, the Court agrees the officers were lawfully present on the driveway and walkway. Therefore, the Court will **ACCEPT** and **ADOPT** the magistrate judge's legal conclusion the officers were lawfully present on Defendant's driveway and walkway leading to the front door of the residence.

6

orally consented he was allowed to sit in the chair. Regardless, after Defendant was put into the chair, Bice read the consent form to him. Defendant agreed to sign, the handcuffs were removed, and Defendant signed the consent form.[3] The issue currently before the Court is whether Defendant's consent, memorialized in the consent form, was voluntary.

"[W]hether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973), *quoted in United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999). Consent must be "unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion." *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992), *quoted in Worley*, 193 F.3d at 386. The determination whether consent was "unequivocally, specifically, and intelligently given" should include examination of such factors as "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his constitutional rights; the length and nature of the detention; and the use of coercive or punishing conduct by the police." *Worley*, 193

---

[3] The consent form reads in relevant part as follows:

I, Richard Stephens, having been informed of my constitutional right not to have a search made of my premises, hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby waive this right and authorize . . . to conduct a complete search of my premises located at 285 Edward Johnston Lane Dayton TN 37321.

. . .

This written permission is being given by me to the above named deputies of the Rhea County Sheriff's Department voluntarily and without threats or promises of any kind.

F.3d at 386. Neither the failure to give *Miranda* warnings nor the failure to advise a person he may refuse consent necessarily renders consent invalid. *Worley*, 193 F.3d at 386; *United States v. Crowder*, 62 F.3d 782, 786 (6th Cir. 1995). Consent is not invalidated simply because a defendant is "in custody at the time that he gave it." *United States v. Burns*, 298 F.3d 523, 541 (6th Cir. 2002) (citing *United States v. Watson*, 423 U.S. 411, 424 (1976)). The Government bears the burden of proving valid and voluntary consent by "a preponderance of the evidence." *Id.* at 385.

After considering the totality of the circumstances, the Court concludes Defendant's consent was voluntary. Defendant is not a minor or incompetent. He is familiar with the criminal justice system and he was told of his right to refuse his consent to a search. *See United States v. Baker*, 78 F.3d 1241, 1244 (7th Cir. 1996) (explaining a 21-year-old who had several minor run-ins with the law was neither "so young or inexperienced in confrontations with police that he did not have the ability to voluntarily consent to the search."). Although Defendant was in handcuffs and on the ground when Bice first spoke with Defendant about consenting, such conduct was neither coercive or improper. Defendant had just been found committing a felony. *See Crowder*, 62 F.3d at 788 (stating "a legal arrest . . . does not constitute evidence of coercion"). Even though the officers did not give Defendant *Miranda* warnings before asking him to sign the consent form, his consent was still voluntarily given. *Id.* at 786; *United States v. Cole*, 51 Fed. Appx. 944, 945 (6th Cir. 2002) (unpublished) (finding consent valid even though *Miranda* warnings were given after the defendant signed the consent form).[4]

---

[4] Defendant argues Defendant was never given any *Miranda* warnings (Court File No. 60, p. 6). From the Court's review of the record as well as the R&R, the Court can find nothing to support the proposition the *Miranda* warnings were never given. Bice clearly testified *Miranda* warnings were given to Defendant (Supp. Tr. at 23). Since the Court has determined Bice is credible, it concludes *Miranda* warnings were given to Defendant.

8

Defendant argues his consent was involuntary because he was on the ground and handcuffed when he consented to a search. The evidence does not support his version of the facts. Bice testified consistently the consent form was signed when Defendant was in the chair. However, even if consent initially was given while Defendant was on the floor, the Court would still find Defendant's consent was voluntary because there simply is no evidence of a threat or promise made to induce Defendant's consent. Defendant also argues consent was involuntary because he thought he was consenting to a more limited search. Defendant's subjective understanding of the scope of his consent has no relation to the voluntariness of his consent. Accordingly, the Court determines Defendant's consent was freely and voluntarily given. Accordingly, the Court will **ACCEPT** and **ADOPT** the magistrate judge's legal conclusion that Defendant's consent was voluntary.

### D.    "Red-Handed" Statement

Finally, Defendant objects to the magistrate's finding Defendant's "red-handed" statement should not be suppressed. Bice testified after he asked for Defendant's consent, he remarked "[y]ou've got marijuana all around you" (Supp. Tr. at 56). Defendant then said, "Well, you've caught me red-handed" (*Id.*). Defendant argues this statement should be suppressed because the statement was made before he had been given his *Miranda* warnings. *Miranda* warnings are only necessary when a person is subject to custodial interrogation. *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003). Bice testified Defendant had been arrested when the "red-handed" statement was made. Therefore, Defendant was in custody.

Nevertheless, Defendant's statement need not be suppressed if he was not subject to "either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). "That is to say, the term 'interrogation' under *Miranda* refers not only to express

9

questioning, but also to any words or actions on the part of the police (*other than those normally attendant to arrest and custody*) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301 (emphasis added); *see also United States v. Avery*, 717 F.2d 1020, 1025 (6th Cir. 1983) (explaining statements that are voluntary and spontaneous when the defendant is under no compulsion to speak are admissible). When deciding if a defendant has been interrogated, a district court "should carefully scrutinize the factual setting . . . ." *Avery*, 717 F.2d at 1025.

Defendant contends when Bice asked Defendant for his consent to search, he was interrogating Defendant in violation of *Miranda*. Asking for consent to search does not amount to an interrogation for purposes of *Miranda*. *United States v. LaGrone*, 43 F.3d 332, 335 (7th Cir. 1994). Therefore, when Bice asked Defendant to consent to a search of his residence, he was not interrogating Defendant.

Defendant also argues Bice's comment "you've got marijuana all around you" amounted to an interrogation. After carefully scrutinizing the factual setting, the Court cannot reach that conclusion. Bice made this statement immediately after Defendant was placed on the ground in handcuffs. When Bice told Defendant there was marijuana all around him, he was merely explaining to Defendant why he was under arrest. Additionally, when Bice told Defendant there was marijuana all around him, he had no reason to know his statement would elicit an incriminating response. In other words, Bice's statement amounted to words "normally attendant to arrest and custody." *Innis*, 446 U.S. at 301. Further, there is no evidence Defendant was particularly susceptible to Bice's statement. *Avery*, 717 F.2d at 481 (finding no interrogation where there was "no evidence that the defendant was particularly susceptible to these questions"). Accordingly, the

10

Court will **ACCEPT** and **ADOPT** the magistrate judge's legal conclusion Defendant's "red-handed" statement is not subject to suppression.

> ### E.     Evidentiary Hearing

Defendant requests the Court to hold an "evidentiary hearing on [D]efendant's objections . . ." (Court File No. 60, p. 1).  Another evidentiary hearing in this matter is unnecessary and would not be the wisest use of judicial resources.  Accordingly, the Court will **DENY** Defendant's request for an evidentiary hearing on his objections.


## IV.     <u>CONCLUSION</u>

For the reasons stated above, the Court will **ACCEPT** and **ADOPT** the magistrate's R&R (Court File No. 19) and will **DENY** Defendant's motion to suppress (Court File Nos. 14, 46).

An Order shall enter.


**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

11